UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MALCOLM RUSH,

        Plaintiff,

v.                                                 Case No. 06-C-683

BELINDA SCHRUBBE, et al.,

        Defendant.

## DECISION AND ORDER

Plaintiff Malcolm Rush has sued three employees of Waupun Correctional Institution under 42 U.S.C. § 1983, alleging that they were deliberately indifferent to his medical needs. The defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Because I conclude that there is no evidence that the defendants were deliberately indifferent, their motion will be granted and the case dismissed.

On March 7, 2006, Rush arrived at Waupun Correctional following a transfer from Columbia Correctional. On March 25, he filed a request for shower shoes. Defendant Schrubbe, the HSU manager, in consultation with defendant Gorske, a nurse practitioner, denied the request. Neither believed that shower shoes were necessary to Rush's health. Schrubbe responded to Rush, telling him that while he could purchase shower shoes on his own, they would not be provided by the prison; she also gave Rush advice on how to care for his feet and instructed him to contact HSU if any fungus developed. (Schrubbe Aff., ¶ 9.)

On May 10, Rush was seen at the University of Wisconsin Department of Immunology for ongoing treatment unrelated to his feet. Apparently the UW physician recommended shower shoes,

echoing a physician's earlier recommendation, on February 22, 2006, on the same subject. (Gorske Aff., ¶ 17.) Throughout this period, Rush had refused to have his feet examined by medical staff at Waupun, which was a factor in the staff's refusal to issue shower shoes. Nevertheless, in light of the UW physician's May 10 recommendation, Gorske states that the Waupun medical staff essentially capitulated and issued Rush shower shoes despite the fact that he refused to have his feet examined. She states that although the staff still did not believe shoes to be necessary (especially given his refusal to have his feet examined), it was easier to issue the shoes because Rush was wasting valuable staff time with his repeated demands. (Gorske Aff., ¶ 19.)

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. Amend. VIII; *Williams v. Liefer,* 491 F.3d 710, 714 (7th Cir. 2007). In addition to prohibiting prison staff from affirmatively inflicting such punishment on inmates, the Eighth Amendment forbids staff from knowingly withholding medical treatment necessary to the inmate's health or from being deliberately indifferent to the need for such treatment. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). In order to establish deliberate indifference, the plaintiff needs to show that he had an objectively serious medical condition and that prison officials knew of a risk posed by the condition and disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994). At the summary judgment stage, this means the plaintiff must place into evidence some facts from which a jury could – if the case were to go to trial – draw the conclusion that the defendants were deliberately indifferent.

In this case, Rush alleges that the defendants – the HSU manager and two nurses at Waupun – were deliberately indifferent to his need to wear shower shoes in order to protect his feet from fungus. He asserts that when the defendants failed to provide him with shower shoes between the time he asked for them (March 25) and received them (on or soon after May 10), the defendants

2

were disregarding physicians' orders that such shoes be provided. He further asserts he is immunosuppressed and has fungus problems elsewhere in his body; thus, the delay in receiving shower shoes exacerbated his foot fungus problem. Thus, in Rush's view it is not merely a question of athlete's foot or some picayune rash but a serious matter of his overall health.

As noted earlier, the plaintiff must first show that he had an objectively serious medical condition. An objectively serious medical condition is one that has been diagnosed by a doctor as requiring treatment or one so obvious that even a lay person would realize treatment is necessary. *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Among the considerations a court must consider are: "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *Id.* (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1060 (9th Cir. 1992)).

Here, although Rush's condition was diagnosed by a doctor – in the sense that the doctor recommended shower shoes – Rush's condition was not diagnosed as a *serious* condition. Indeed, the UW Immunology exam with Dr. Graziano reflects the following tepid conclusion: "If it is at all possible it would be good if [Rush] could get some shower shoes. Does look like he has a little bit of tinea pedis (athlete's foot) despite being on fluconazole." (Gorske Aff., ¶ 6.) Thus, the doctor on whose opinion Rush bases his case merely believed it would be "good" if shower shoes were provided because Rush had a "little bit" of athlete's foot.[1]

---

[1] Rush's exhibits reveal a little more detail. Transcriptions from the February 2006 exam with Dr. Graziano reflect the doctor's belief that shoes should be provided because Rush was susceptible to fungus. There is no indication in these records, however, that Rush already was experiencing some kind of pain or foot fungus related to the absence of shower shoes.

3

Rush also relies on the fact that shoes were ordered while he was at Columbia Correctional prior to his transfer to Waupun. A largely illegible health service request signed February 26, 2006 indicates that shower shoes were to be ordered. (Rush Aff., Ex. at 8.) Another note reflecting the February 22 exam with UW Immunology indicates "shower shoes – immunocompromised individual subject to fungal infection Per Dr. Graziano / Dr. Suliene / S Ward RN." (Rush Aff., Ex. at 6.) Further, Nurse Judy Schaefer issued an order in March 2006 stating that Rush "may" have shower shoes indefinitely. (Third Gorske Aff., Ex. A.)

None of these pieces of evidence demonstrate that Rush had an objectively serious medical condition, however. The only "condition" specifically described by medical staff is a "little bit" of "tinea pedis"; all of the other remarks merely reflect the belief that Rush was *susceptible* to fungal infection in his feet. If a prisoner is susceptible to serious asthma attacks or seizures and medication is withheld, indifference to that risk could certainly give rise to an Eighth Amendment violation. But athlete's foot itself does not generally amount to an objectively serious medical condition, and thus the mere *chance* of acquiring it cannot reach that level either. *See Calhoun v. Thomas,* 360 F. Supp.2d 1264, 1287 (M.D. Ala. 2005) (athlete's foot not serious enough to rise to an Eighth Amendment violation); *Landfair v. Sheahan,* 878 F.Supp. 1106, 1112-13 (N.D. Ill. 1995) ("While no doubt uncomfortable, athlete's foot cannot be considered an injury serious enough . . ."). Accordingly, I find that the evidence shows merely that Rush had, at worst, a very mild case of athlete's foot and / or a risk of developing additional fungus problems. This evidence, in short, would not allow a jury to conclude that Rush had an objectively serious medical condition.

Even if Rush's condition were objectively serious, however, there is no evidence that any of the defendants were aware of that fact. Rush bases his entire case on the fact that physicians had

4

"ordered" shower shoes but, as shown above, the orders Rush relies on are best referred to as recommendations ("if at all possible . . ."). In short, there is nothing in the record that would have informed any of the defendants that Rush's athlete's food problem was objectively serious.

In fact, the evidence shows that none of the defendants were aware of the seriousness of his condition because he refused to allow anyone to evaluate him. It would make a mockery of Eighth Amendment law if a prison inmate could dictate his own course of treatment without allowing his medical providers a chance to evaluate him. I grant that it is conceivable that an inmate could suffer from the sort of condition that would make a previous doctor's order binding for the extent of the inmate's incarceration. Suppose, for instance, that an inmate had received a diagnosis from a cancer specialist who prescribed a strict and extensive course of treatment. In that case, it might not be the province of prison nurses to overrule or ignore the specialist's opinions. But when the inmate's condition is foot fungus and the doctor's recommendation is as lukewarm or merely suggestive as it is here, it should be clear that on-site medical professionals – especially a nurse practitioner like Gorske – are not forever bound by the course of treatment recommended by a physician. Situations change, prisoners heal (or worsen), and method of treatment may need to be altered or eliminated depending on circumstances. Thus, such providers need at the very minimum to ensure that the treatment earlier suggested is still viable. More to the point, when an inmate explicitly refuses medical evaluations regarding the very problem he is complaining about, he undermines his ability to later claim that the staff was deliberately indifferent to that condition.

In sum, I find no evidence in the record that Rush was suffering from an objectively serious medical condition. Moreover, even if his condition had advanced to a "serious" level, none of the defendants were aware of the seriousness of the condition because (a) prior physician

5

recommendations did not alert them to that fact, and (b) Rush refused to allow his feet to be examined by any of the defendants. Accordingly, the defendants' motion for summary judgment is **GRANTED** and the case is **DISMISSED**.

      **SO ORDERED** this   10th   day of September, 2007.

                                        s/ William C. Griesbach
                                        William C. Griesbach
                                        United States District Judge